UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

ODED GREENBERG, M.D.,

                Plaintiff,

          -against-

STATE UNIVERSITY HOSPITAL-DOWNSTATE
MEDICAL CENTER a/k/a THE STATE UNIVERSITY OF
NEW YORK HEALTH SCIENCE CENTER AT BROOKLYN
a/k/a SUNY DOWNSTATE MEDICAL CENTER, NEW
YORK CITY HEALTH AND HOSPITALS CORPORATION,
KINGS COUNTY HOSPITAL CENTER, DEBORAH L.
REEDE, STEVEN PULITZER, and JOHN and JANE DOES
1-20,

                Defendants.

-----------------------------------------------------------------------X

15 CV 2343 (PKC/VMS)

**SECOND
AMENDED COMPLAINT
AND DEMAND
FOR JURY TRIAL**

       Plaintiff Oded Greenberg, M.D. ("Plaintiff"), as and for his second amended complaint against defendants State University Hospital-Downstate Medical Center a/k/a The State University of New York Health Science Center at Brooklyn a/k/a SUNY Downstate Medical Center ("Downstate"); New York City Health and Hospitals Corporation ("HHC"); Kings County Hospital Center ("KCHC"); Deborah L. Reede ("Reede"); Steven Pulitzer ("Pulitzer"), and John and Jane Does 1 through 20 ("Does 1-20") (collectively, "Defendants"), hereby alleges, upon information and belief, as follows:

### Parties and Jurisdiction

       1.     Plaintiff is a natural person and a citizen of both the United States of America and the State of New York, with a residence, as well as his principal place of abode, located in Brooklyn, New York. Plaintiff is White (Caucasian) and of the Jewish faith. At all times relevant herein, Plaintiff has been a physician, board-certified in both Diagnostic Radiology and Anatomic Pathology; fellowship-trained in Body Imaging; and duly licensed and authorized to practice medicine and radiology in the State of New York. From in or about April 2001 through on or about October 22, 2014, Plaintiff was employed by Defendants as a physician and radiologist, and held,

at various times, certain positions and titles attendant thereupon and/or related thereto including, but not necessarily limited to, Director of ER Radiology at KCHC. At the time of Defendants' wrongful acts as described hereinbelow, Plaintiff was at least fifty-four (54) years of age.

2. Defendant Downstate is a duly authorized and existing agency and/or instrumentality of the State of New York which is and/or operates a hospital located at 450 Clarkson Avenue, Brooklyn, New York 11203, and maintains its principal place of business at that address. At all times relevant herein, John F. "Skip" Williams has been the President, Pamela Sass has been the Dean, and Michael Lucchesi has been the Chief Medical Officer, of Downstate.

3. Defendant HHC is a body corporate and politic, created pursuant to Section 7384 of the Unconsolidated Laws of the State of New York, with its principal place of business located at 125 Worth Street, New York, New York 10013. At all relevant times, HHC has been, and continues to be, engaged in the provision of health and medical services to citizens and other persons in the City of New York pursuant to Section 7382 of said Unconsolidated Laws, including through certain hospitals, one of which is, and at all times relevant herein has been, KCHC.

4. Defendant KCHC is a hospital and agency or instrumentality of HHC, with its principal place of business located at 451 Clarkson Avenue, Brooklyn, New York 11203. At all times relevant herein, KCHC maintained and, upon information and belief, continues to date to maintain, an affiliation agreement with Downstate. Pursuant to that affiliation agreement, Plaintiff was assigned by Defendants to perform, and at all times relevant herein actually principally performed, his daily duties as a radiologist at KCHC.

5. Defendant Reede is a natural person and a resident of the State of New York with a residence, as well as her principal place of abode, located at 235 Adams Street, Apartment 6D, Brooklyn, New York 11201. Reede's office, as well as her principal place of business, is located at 450 Clarkson Avenue, Brooklyn, New York 11203. Reede is Black (African- or Caribbean-American) and not of the Jewish faith. At various times relevant herein, Reede was (and continues to date to be) a professor and the Chairperson of the Department of Radiology at Downstate.

6. Defendant Pulitzer is a natural person and a resident of the State of New York with a residence, as well as his principal place of abode, located at 141 West 71st Street, Penthouse A, New York, New York 10023. Pulitzer's office, as well as his principal place of business, is located at 451 Clarkson Avenue, S Building, Brooklyn, New York 11203. At various times relevant herein, Pulitzer was (and continues to date to be) an assistant professor at Downstate and Director of Radiology at KCHC.

7. Defendants Does 1 through 20 are or were directors, officers, employees, agents, representatives, staff, successors, assigns, aiders and abettors, and/or co-conspirators of Defendants Downstate, HHC, KCHC, Reede and/or Pulitzer in the acts, omissions, conspiracies and other wrongful conduct described herein, all of whom knew or should have known that their actions would cause legal injury to Plaintiff. The true names and capacities of Does 1-20 are presently unknown to Plaintiff, and Plaintiff accordingly sues such defendants by such fictitious names. Upon discovery of their true names and capacities, Plaintiff will amend this Complaint to add said persons or other entities as additional named defendants herein, or otherwise identify them as per instruction or direction of the Court.

8. This Court has jurisdiction over the subject matter of this action, which is brought under various federal, state and city enactments including Sections 1331, 1337(a), 1367(a) and 2201 of Title 28, United States Code, 28 U.S.C. §§ 1331, 1337(a), 1367(a) and 2201, as amended; Section 2000e, et seq., of Title 42, U.S. Code ("Title VII" of the Civil Rights Acts of 1964 and 1991), 42 U.S.C. § 2000e, et seq., as amended; Sections 1981 and 1983 of Title 42, United States Code, 42 U.S.C. §§ 1981 and 1983, as amended ("Section 1981" and "Section 1983," respectively); the Fourteenth Amendment to the United States Constitution, and in particular, the Equal Protection Clause thereof; Section 2601, et seq., of Title 29, United States Code, 29 U.S.C. §§ 2601, et seq., as amended (the "FMLA"); Section 290, et seq., of the Executive Law of the State of New York, N.Y. Exec. L. § 290, et seq., as amended, commonly known as the New York State Human Rights Law (the "NYSHRL"); Title 8, Chapter 1, of the Administrative Code of the City of

4

New York, N.Y.C. Admin. Code § 8-101, *et seq.*, as amended, commonly known as the New York City Human Rights Law (the "NYCHRL"); and principles of ancillary, pendent and supplemental jurisdiction.

9. Defendants are all employers within the meaning of the various statutes identified hereinabove and below, and/or otherwise pursuant to the statutes or common law under which one or more claims are brought herein.

10. On October 1, 2015, the U.S. Department of Justice issued, and on October 7, 2015, Plaintiff received, Right to Sue letters with respect to charges which he had previously filed with the U.S. Equal Employment Opportunity Commission (the "EEOC") on February 9, 2015, under Charge Nos. 520-2015-01218 and 520-2015-01423. Plaintiff has accordingly timely and properly fulfilled all statutory and/or other prerequisites, if any, to the bringing of each and all of the claims and causes of action stated hereinbelow with respect to which a prior EEOC, or other administrative agency, filing was or is required.

11. At all times relevant herein, and with respect to each statute under which one or more claims is brought herein, Defendants employed more than the required minimum number of employees, if any, and Plaintiff had worked for more than the required minimum period of time, and more than the required minimum number of hours within any statutorily relevant period, if any. All other statutory and/or other procedural prerequisites for Plaintiff to be able to sue thereunder, and for each, and all, of the Defendants to be subject to, and liable thereunder, if any, have been met, satisfied and/or otherwise timely and properly fulfilled.

12. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b).

**Facts Giving Rise to This Action**

Plaintiff's Early History at Downstate and KCHC

13. Plaintiff's medical career spans more than thirty (30) years, and includes a spotless employment record with Defendants. Plaintiff first attended medical school at Downstate, and then worked as a medical resident, first in pathology, then radiology, for Defendants. After a

one-year fellowship in body imaging at Emory University, and several years in private practice, Plaintiff returned to Defendants as a board-certified radiologist and attending physician in April 2001. Over the course of thirteen-and-one-half (13½) years of service to Defendants thereafter, Plaintiff was assigned to work, and in fact worked, principally at KCHC, in its emergency room (the "ER") and "ER [radiology] reading room."

14. At all times relevant herein, Plaintiff's responsibilities as an attending physician in KCHC's ER included interpreting imaging studies (*e.g.,* X-rays, CT scans, MRIs and ultrasounds), consulting and otherwise working closely with both resident and attending physicians in a variety of specialties and subspecialties, principally Radiology, Emergency Medicine and Surgery, and often attending rounds and/or discussing with them (and sometimes examining) patients.

15. Over the course of his employment with Defendants, Plaintiff was highly regarded both by his colleagues and medical residents, and was considered by many to be the most accurate, available and versatile radiologist in KCHC's Department of Radiology. His expertise included, and continues to include, ER Radiology, Body Imaging, Neuroradiology, Pediatric Radiology, Gastrointestinal Radiology, Musculoskeletal Radiology and Chest Imaging. Plaintiff served as Director of ER Radiology at KCHC from 2005 to 2009.

16. Plaintiff's employment with Defendants proceeded without incident from its commencement until at least mid-2013. At that time, Defendants hired Reede as Chairperson of their Department of Radiology.

The Hiring of Defendant Reede

17. Almost immediately after assuming the position of Department Chairperson, Reede began an effort to reduce the number of non-Black (principally White/Caucasian), and particularly Jewish, physicians and other personnel in the department, and increase the number who were/are Black (African- or Caribbean American), non-Jewish and largely, if not uniformly, younger. Such actions included the outright discharge of several White, Jewish and/or older physicians and

other personnel; the slashing of the compensation of other White (including Jewish) and/or older physicians and other personnel who were not immediately discharged (while the compensation of Black, non-Jewish and/or younger physicians was maintained); and the micro-management of those physicians in the conduct of their daily duties. Black, non-Jewish and/or younger physicians, in contrast, were permitted greater freedom, and leeway, under applicable rules and policies.

18. The actions taken against White, Jewish and older physicians and other personnel who were not immediately discharged were, upon information and belief, designed and intended to prompt or pressure those physicians and other personnel into retiring or otherwise resigning their positions, and/or to otherwise prefer Black over White (including Jewish) and/or younger over older physicians and other personnel in compensation and/or cost-cutting decisionmaking. Upon information and belief, Reede also effectuated each dismissal of a White, Jewish and/or older physician with little or no notice to the affected individual.

19. Over the period from mid-2013 through October 2014, Reede's actions included the outright dismissal of at least five (5) White (Caucasian), Jewish, older physicians (Plaintiff; Catherine Mason, M.D.; Daphne Roitberg, M.D.; David Areman, M.D., and Alan Kantor, M.D.); three other older, non-Black physicians (Gautam Mirchandani, M.D., Jaya Nath, M.D., and Woo Choi, M.D.); and at least one White, Jewish administrative employee (Esther Neiman). Plaintiff was discharged by Defendants on or about October 22, 2014. Another White, Jewish radiologist (Hyman Schwarzberg, M.D.) had his compensation substantially reduced. In contrast, and notwithstanding productivity substantially inferior to most or all of the physicians who were dismissed, Reede retained, among others, Stephen Waite, M.D., a Black radiologist, and also excused certain conduct by Dr. Waite which, had it been committed by a White, Jewish and/or older physician, would have prompted formal discipline.

20. During said period, Reede also saw to the hiring of several physicians (and, in the case of the discharged administrative employee, a non-Jewish administrative employee replacement) who were/are Black, non-Jewish and younger than their predecessors, including

Rhonda Osborne, M.D., who replaced Catherine Mason, M.D., and Jinel Scott-Moore, M.D., who replaced Plaintiff and/or Dr. Areman. All, or virtually all, of the Black, non-Jewish and/or otherwise younger physicians and other personnel hired by Reede to replace Plaintiff and the other White, Jewish and older physicians and other personnel whom she had discharged were also of substantially lesser experience and/or qualifications than those whom she and the other Defendants had discharged.

Defendant Reede's Racial and Religious Bias

21.     At, or around, the time of this campaign by Reede to materially alter, both racially and religiously, the composition of the Radiology Department, and to make it younger, Reede also made no secret of her unfavorable view of Jews. Among other things, Reede made statements which disparaged and/or stereotyped Jews, cast them in a negative light, or otherwise made clear her plain and obvious bias against them on the basis of their race and religion.

22.     Among the remarks made by Reede were references to several Orthodox Jewish physicians collectively as "you people" and "those people," as well as open expressions of upset that they, on their lunch hour, would meet on department premises for midday religious prayers. Upon observing certain Orthodox Jewish physicians' gatherings for prayer, in fact, Reede announced that she would be taking away the room that they had been using therefor, and making it her own office. Doing so, of course, would, and did, preclude any further use of it for the Orthodox Jewish physicians' prayer services. Further, Reede separately directed that, from that point forward, said physicians would not be permitted to meet during the workday anywhere on department premises, to pray.

23.     Additionally, when two Orthodox Jewish physicians sought to create a work schedule that would permit them to avoid having to work on the Jewish High Holidays (Rosh Hashanah and Yom Kippur), Reede referred to them as "birds of a feather." Separately, referring to Martin Luther King Jr. Day, Reede also pointedly stated to several White, Jewish physicians on one or more occasions, in words or substance, that, "I know you don't care, but this is our [i.e.,

Blacks'] holiday." Reede was also separately heard to express a dislike for White (Caucasian) people generally, as well as for, particularly, how many Whites were (then) employed in her (*i.e.,* the radiology) department.

The Unlawfully Biased Denial of Plaintiff's Reappointment as Director of ER Radiology

24.     Reede initially visited her unlawful bias upon Plaintiff in July 2014, by denying his application for reappointment and promotion to the position of Director of ER Radiology. At that time, Plaintiff already possessed qualifications for the position superior to that of any other candidate, including from having served estimably in it several years earlier. Plaintiff had voluntarily relinquished the position in 2009 to be able to work from home (performing teleradiology) while he cared for one of his sons, Jayden, a child with special needs. It had then been assumed by David Areman, M.D., a physician and radiologist who is of the Orthodox Jewish faith.

25.     In or about July 2014, Reede dismissed Dr. Areman. The position of Director of ER Radiology thus again became available. Plaintiff requested reinstatement/reappointment to the position. At the time, he was the radiologist in the department who was, by far, the most experienced, and best qualified, for the post. Notwithstanding Plaintiff's application, however, Reede denied it to him and, instead, hired Dr. Scott-Moore, a new, much younger, Black, non-Jewish radiologist, whom Plaintiff himself had actually supervised during her residency just a few years earlier, to assume it.

26.     Upon information and belief, at the time of her hiring, Dr. Scott-Moore was eight (8) or fewer years out of residency, and had no publications. She also lacked Plaintiff's board certification in two specialties, his fifteen (15) years of experience in ER Radiology, and his approximately twenty (20) years of experience in radiology overall (including in academic institutions, private practice, and teleradiology), especially in interpreting acute care imaging – the "stock in trade" of ER Radiology. Dr. Scott-Moore, however, was (and is) approximately twenty (20) years younger than Plaintiff, Black and, upon information and belief, non-Jewish.

27.     At a meeting with Plaintiff on or about July 22, 2014, Reede stated, in

connection with hiring Scott-Moore as Director of ER Radiology, that, regardless of Dr. Scott-Moore's lack of experience or merit, she (Dr. Reede) wanted someone younger and "closer to residency." Her purported reason was because she believed they would be better able to relate to, and educate, resident (*i.e.,* younger) physicians.

The Events of Early September 2014

28.     Aside from being White, Jewish, and substantially older than his replacement, Plaintiff is a parent of two young children, one of whom (Jayden) has special needs due to disability. At all times relevant herein, Defendants have been aware of this. In their very first meeting, in fact, shortly after her hiring as department chairperson, Reede and Plaintiff had a conversation about their children in which Plaintiff specifically mentioned Jayden and his condition.

29.     On or about August 28, 2014, Plaintiff had been informed by Jayden's then-current school that, due to difficulties related to his disability, Plaintiff's immediate attention was required to the making of arrangements for Jayden to be cared for and schooled elsewhere.

30.     The very next day, August 29, 2014, Plaintiff informed Defendants both of his emergent need for leave to care for his son, and in particular, that he would be unable to work on two days the following week – September 4 and 5 – for that reason. Instead of simply planning to "call in sick" on those dates, Plaintiff inquired what the proper steps were for obtaining leave therefor.

31.     Having received no response, on or about September 2, 2014, Plaintiff also spoke with Pulitzer, his immediate superior, to inform him, as well, of his (Plaintiff's) need for leave on September 4 and 5. Plaintiff did so not only to make sure Pulitzer, too, knew of his need and request for leave, but out of professionalism, and consideration for Defendants (and Pulitzer specifically), as well, including so that Pulitzer would have time to obtain "coverage" for the department during Plaintiff's brief leave.

32.     At that time, as well as at all other times relevant herein, Pulitzer, also, was aware that Plaintiff had a child with special needs. Regardless, Pulitzer, acting on behalf of

Defendants, responded to Plaintiff's notice and request by informing him that the department was short-staffed, and he (Plaintiff) thus could not take the leave he sought.

33. Plaintiff reiterated his request to Pulitzer on September 3. Pulitzer then consulted with Reede, and a short while later, presented Plaintiff with a document stating, in writing, that Plaintiff's request for leave on September 4 and 5 had been denied, and that if he failed to appear for work on those days, he, and the matter generally, would be referred to "Labor Relations."

34. Upon being presented with the document, Plaintiff told Pulitzer that he didn't think that it was fair that Defendants were forcing him to choose between his career and his family, but that he had no alternative except to address his urgent family need. Pulitzer responded, "I hope you know what you are doing."

35. Early on the morning of September 4, Plaintiff again reiterated his need for family leave, and a brief absence, in yet another email to Defendants. He then took that day, and the next, for such leave, notwithstanding Defendants' prior denial.

36. Unexpectedly and coincidentally, Plaintiff injured his back getting out of bed on the morning of September 4, and was thereupon unable to stand or walk without severe pain.

37. That same day, September 4, unbeknownst to Plaintiff, Defendants sent Plaintiff a letter (the "September 4 letter") directing him come to their Labor Relations office prior to returning to work, but to not otherwise come on Downstate's or KCHC's premises without first making an appointment with, and reporting to, their Office of Public Safety. The letter made no mention of discipline, nor gave any notice thereof, nor did it state the time(s) or date(s) of, or even allege that Plaintiff had committed, any offense, much less identify what offense(s), if any, Plaintiff was being alleged to have committed. Defendants "cc'd" (*i.e.,* copied) Plaintiff's union, United University Professions ("UUP"), on the September 4 letter.

38. The collective bargaining agreement then in force between one or more of Defendants on the one hand, and UUP on the other, covering Plaintiff and the position in which he was then employed (hereinafter, the "CBA"), required all such information to be included in any

notice intended for a disciplinary purpose, or otherwise with respect to any alleged misconduct or wrongdoing by a covered (*i.e.,* "PSNU") employee. Upon information and belief, the CBA also required Defendants to contemporaneously (*i.e.,* within five (5) days) notify UUP that a notice of discipline has been sent to a PSNU member.

39. No meeting addressing possible discipline of a PSNU member may properly take place until both UUP has been given such notice(s), and the period of time prescribed by the CBA therefor has elapsed. Plaintiff, however, neither heard nor received anything from UUP upon, or otherwise in response to, its receipt of the September 4 letter.

40. Notwithstanding still suffering substantial back pain and associated difficulty, Plaintiff tried to return to work on Monday, September 8. That morning, Plaintiff first notified a colleague at his work location – the KCHC ER "reading room" – that he would be late. He then first accompanied Jayden to his first day at his new school, and then visited an "urgent care" clinic, where he was examined by a physician for his back injury. Upon examining Plaintiff, the physician there noted that Plaintiff's back muscles were in "spasm," and gave Plaintiff both a prescription for muscle relaxers, and a treatment plan. Plaintiff then traveled to KCHC, arriving at approximately 11:30 a.m.

41. Notwithstanding his condition, Plaintiff promptly returned to his duties, reading multiple studies on critically ill patients, and making recommendations for follow-up studies on several. At or around 1:00 p.m., however, Pulitzer instructed Plaintiff to log off his computer and immediately go to Defendants' Labor Relations office. Plaintiff did so, though without any time or opportunity to request that a UUP representative join and represent him thereat.

42. Upon information and belief, Defendants had provided no advance notice of the September 8 meeting to UUP, or any agent or representative thereof. No agent or representative of UUP attended the meeting, nor did any otherwise in any way participate, assist or represent Plaintiff in connection with it, or any of Defendants' actions against Plaintiff prior to, or on, that date.

43. At the September 8 meeting, which lasted in excess of four (4) hours, Plaintiff,

notwithstanding his continuing back pain, was interrogated, and was kept waiting for several hours without food or an opportunity to either obtain the medicine he had just been prescribed for his back pain, or to take other medication which had previously been prescribed for him (for anxiety and depression). He was then presented with a document which had already been prepared by Defendants, apparently in anticipation of his attempt to return to work that day (the "Extorted Agreement"). Plaintiff was informed that the Extorted Agreement was his only alternative if he wanted to be able to return to his duties instead of having his pay suspended and suffering other, unspecified disciplinary action for having taken the two days of leave (September 4 and 5) notwithstanding Defendants' denial.

44. Had Plaintiff been discharged or otherwise prevented from continuing his employment as of September 8, 2014, he would not only have suffered an immediate loss of necessary family income, he also would not have vested in, or otherwise would have lost or suffered an impairment, reduction or other loss with respect to, certain of his retirement/health benefits.

45. At the time Plaintiff was presented with the Extorted Agreement, he was exhausted after Defendants' lengthy interrogation; still in substantial pain; had had no break for lunch or medication; was without any union representation or advice; and had been allowed no interval, reasonable or otherwise, to either review and consider the Extorted Agreement himself, or obtain legal counsel to advise him regarding it. The Extorted Agreement specified that, because Plaintiff had taken "unauthorized" leave, as well as because of certain alleged administrative failures (*e.g.,* "switching schedule without authorization of his supervisor"), he: (a) would not be permitted any further days off without prior approval by Defendants; (b) waived any and all other rights he might have or have had (including to whatever process was or would otherwise have been available to him or within his rights as a member of UUP); (c) could thereafter be discharged at any time and for any reason (or for no reason at all), solely at Defendants' discretion, notwithstanding the CBA or any other rights which he might otherwise have or have had; and (d) would have no right or recourse in such event, or any process available to him to challenge such discharge, or appeal,

whether under the CBA, any other extant procedures available to employees of Defendants, or otherwise.

46.    Unaware of his rights (including, but not limited to, under the CBA and the FMLA), and without union representation, but knowing that he needed to be able to return to work to continue to provide for his family, as well as fulfill his immediate duties to several patients with respect to whom he had recommended follow-up examinations earlier that day, Plaintiff signed the Extorted Agreement. Defendants thereupon permitted him to return to work, and Plaintiff did so.

Plaintiff's Unlawful Discharge

47.    Several weeks later, on or about September 23, 2014, Plaintiff informed Pulitzer that he again needed, on an emergent basis, an extremely brief leave – approximately two hours that afternoon – to attend to his son's care and well-being. Again Pulitzer, acting for Defendants, denied Plaintiff's request, claiming insufficient staffing.

48.    In light of this second denial, Plaintiff first arranged for another physician to cover for him, and then, instead of taking the brief afternoon leave he had requested, took merely his lunch hour to attend to his family matter. Upon his return, Plaintiff went directly to the ER to consult with several of his clinical colleagues regarding several patients, and also reviewed a CT scan on one of their monitors. Only then did he return to the ER reading room. In total – including his lunch hour away, his consultations and discussions, and his review of the CT scan – Plaintiff had been absent from the ER reading room for approximately ninety (90) minutes.

49.    Nevertheless, Defendants purportedly sent to Plaintiff, on or about October 3, another letter (the "October 3 letter"), this one directing him to report to Labor Relations at 11:00 a.m. on October 8 to "discuss allegations of insubordination, leaving the worksite without authorization and related matters." Plaintiff, however, did not receive the October 8 letter, nor was he otherwise made aware of it before that date.

50.    That afternoon (October 8), Stephanie Bernadel, a member of Defendants' Labor Relations Department, who is also Black, phoned Plaintiff in the ER, asking why he had not

attended the meeting. Plaintiff responded that he had not received notice of any meeting, and so did not know what she was referring to. He asked what the meeting was for, and Bernadel responded that it concerned his (alleged) violation of the terms of the agreement he had signed on September 8 – the Extorted Agreement – by taking unauthorized leave again.

51. Because Plaintiff had not received notice of the October 8 meeting, it was postponed until October 10. In the interim, and until further notice, he was directed by Bernadel to not return to work.

52. At the October 10 meeting, Defendants in fact conducted what even they themselves characterized as an "interrogation" of Plaintiff. Again, no one from UUP attended. Instead, in their absence, Plaintiff was again questioned by Bernadel, at length, about his lunch hour "leave" on September 23. Defendants also informed Plaintiff that he was being considered for discharge for a second occasion of unauthorized leave and insubordination.

53. During the interrogation, Plaintiff complained that he had been, and was continuing to be, repeatedly denied leave to care for, or otherwise tend to or address the needs of, his disabled child. He stated that he believed he was being treated differently from, and less favorably than, other physicians because of his race, religion and/or age, as well as because he had a child with special needs. Plaintiff asked Bernadel if he could file with the EEOC. In response, Bernadel stated that Plaintiff had waived that right based upon the agreement he had signed on September 8 (the Extorted Agreement).

54. A few days later, Plaintiff sent an email to Bernadel reiterating his complaint and belief that he was being discriminated against. In response, Bernadel informed Plaintiff that such claims were handled by Defendants' "Office of Diversity."

55. On or about October 20, yet another meeting was held between Defendants' Labor Relations personnel (Bernadel and Leonzo Cuiman, Assistant Vice-President for Labor Relations, who is also Black) and Plaintiff. At this (third) meeting, Plaintiff's discharge was again discussed, and he was offered the "opportunity" to resign his position in lieu of being discharged.

Plaintiff asked why he was not simply being permitted, under the FMLA, the brief leave he had requested to care for his son. He received no answer. He also reiterated his intent to pursue a claim of discrimination with the EEOC, and declined to resign his longstanding position.

56. Two days later, on or about October 22, 2014, Defendants discharged Plaintiff outright.

57. Upon being discharged, Plaintiff was also denied any severance or separation pay, notwithstanding his more than thirteen (13) years of loyal and dedicated service. Defendants further fought (unsuccessfully) his claim for unemployment compensation. Upon information and belief, they thereafter also sought to prevent him from obtaining a similar position elsewhere.

58. Each, and all, of Defendants' purported grounds for disciplining Plaintiff, whether on September 8 or any subsequent time; for the Extorted Agreement; and for their subsequent discharge of Plaintiff from his position, were and are pretextual. Defendants' true bases for their adverse employment actions against Plaintiff were: discrimination against him on the basis of his race, religion and/or age; retaliation against him for complaining thereof and/or openly contemplating pursuit of his rights at the EEOC; retaliation against him for attempting to exercise, and then actually exercising, his FMLA rights; and the various other violations of the various statutes and other laws cited both hereinabove and below.

### AS AND FOR A FIRST CAUSE OF ACTION
(Violation of 29 U.S.C. § 2615(a))
(Against All Defendants)

59. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 58 hereof as if more fully set forth at length herein.

60. At all times relevant herein, Defendants were all employers within the meaning of Section 101(4) of the FMLA, 29 U.S.C. § 2611(4), as amended. At all times relevant herein, Plaintiff had worked for more than twelve months, and more than 1,250 hours in the immediately prior twelve months, for Defendants. Plaintiff thus was an "eligible employee" of Defendants within the meaning of Section 101(2) of the FMLA, 29 U.S.C. § 2611(2), as amended,

and an employee of Defendants who was entitled to leave pursuant to Section 102(a)(1)(d) of the FMLA, 29 U.S.C. § 2612(a)(1)(D), as amended.

61. By their various wrongful actions as described above, including but not limited to denying Plaintiff requested leave for which he was eligible and to which he was entitled under the statute, Defendants violated Section 105 of the FMLA, 29 U.S.C. § 2615, as amended.

62. Defendants' actions were willful.

63. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Violation of 29 U.S.C. § 2615(a))
(Against All Defendants)

64. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 63 hereof as if more fully set forth at length herein.

65. At all times relevant herein, Defendants were all employers within the meaning of Section 101(4) of the FMLA, 29 U.S.C. § 2611(4), as amended. At all times relevant herein, Plaintiff had worked for more than twelve months, and more than 1,250 hours in the immediately prior twelve months, for Defendants. Plaintiff thus was an "eligible employee" of Defendants within the meaning of Section 101(2) of the FMLA, 29 U.S.C. § 2611(2), as amended, and an employee of Defendants who was entitled to leave pursuant to Section 102(a)(1)(d) of the FMLA, 29 U.S.C. § 2612(a)(1)(D), as amended.

66. By their various wrongful actions as described above, including but not limited to discharging Plaintiff for taking leave for which he was eligible and to which he was entitled under the statute, Defendants violated Section 105 of the FMLA, 29 U.S.C. § 2615, as amended.

67. Defendants' actions were willful.

68. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
(Retaliation in Violation of 29 U.S.C. § 2615(b))
(Against All Defendants)

69. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 68 hereof as if more fully set forth at length herein.

70. Defendants' wrongful acts described above, including, but not limited to, their adverse actions taken against Plaintiff for objecting to and opposing their various actions and practices which were in violation of Section 105(a) of the FMLA, 29 U.S.C. § 2615(a), as amended, including but not limited to discharging Plaintiff for protesting their denial of his leave, and taking such leave notwithstanding such denial, constituted unlawful retaliation against Plaintiff in violation of Section 105(b) of the FMLA, 29 U.S.C. § 2615(b), as amended.

71. Defendants' actions were willful.

72. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Discrimination in Violation of 42 U.S.C. § 2000e-2(a)(1))
(Against Downstate, HHC and KCHC)

73. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 72 hereof as if fully set forth at length.

74. One or more of Defendants' various wrongful acts, omissions, failures and refusals to act, as described hereinabove, or otherwise, were taken against Plaintiff on the basis of his race, and constituted discrimination against him on the basis thereof with respect to his

compensation, terms, conditions and privileges of employment, in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, and particularly 42 U.S.C. § 2000e-2(a)(1).

75. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
(Discrimination in Violation of 42 U.S.C. § 2000e-2(a)(2))
(Against Downstate, HHC and KCHC)

76. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 75 hereof as if fully set forth at length.

77. One or more of Defendants' various wrongful acts, omissions, failures and refusals to act, as described hereinabove, or otherwise, were taken against Plaintiff on the basis of his race, and constituted discrimination against him on the basis thereof with respect to his compensation, terms, conditions and privileges of employment, in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, and particularly 42 U.S.C. § 2000e-2(a)(2).

78. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION**
(Discrimination in Violation of 42 U.S.C. § 2000e-2(a)(1))
(Against Downstate, HHC and KCHC)

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 78 hereof as if fully set forth at length.

80. One or more of Defendants' various wrongful acts, omissions, failures and refusals to act, as described hereinabove, or otherwise, were taken against Plaintiff on the basis of his religion, and constituted discrimination against him on the basis thereof with respect to his

compensation, terms, conditions and privileges of employment, in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, and particularly 42 U.S.C. § 2000e-2(a)(1).

81.    As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Discrimination in Violation of 42 U.S.C. § 2000e-2(a)(2))
(Against Downstate, HHC and KCHC)

82.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 81 hereof as if fully set forth at length.

83.    One or more of Defendants' various wrongful acts, omissions, failures and refusals to act, as described hereinabove, or otherwise, were taken against Plaintiff on the basis of his religion, and constituted discrimination against him on the basis thereof with respect to his compensation, terms, conditions and privileges of employment, in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, and particularly 42 U.S.C. § 2000e-2(a)(2).

84.    As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(Discrimination/Retaliation in Violation of 42 U.S.C. § 2000e-3(a))
(Against Downstate, HHC and KCHC)

85.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 84 hereof as if fully set forth at length.

86.    One or more of Defendants' various wrongful acts, omissions, failures and refusals to act, as described hereinabove, or otherwise, were taken in retaliation and/or as reprisal for Plaintiff's opposition and/or objection to Defendants' various unlawful employment practices

and/or conduct. Said acts, omissions, failures and refusals to act accordingly constituted violations of Title VII, and particularly 42 U.S.C. § 2000e-3(a).

87. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A NINTH CAUSE OF ACTION
(Violation of 42 U.S.C. § 1981)
(Against All Defendants except HHC and KCHC)

88. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 87 hereof as if more fully set forth at length herein.

89. Plaintiff is Caucasian.

90. At all times relevant herein, Defendants employed Plaintiff within the meaning of Section 1981.

91. By the acts and practices described above, Defendants discriminated against Plaintiff on the basis of his race, in violation of Section 1981.

92. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

93. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A TENTH CAUSE OF ACTION
(Retaliation Under 42 U.S.C. § 1981)
(Against All Defendants except HHC and KCHC)

94. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 93 hereof as if more fully set forth at length herein.

95. Plaintiff is Caucasian.

96. At all times relevant herein, Defendants employed Plaintiff within the meaning of Section 1981.

97. By the acts and practices described above, Defendants retaliated against Plaintiff for complaining of disparate treatment on the basis of his race, in violation of Section 1981.

98. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

99. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
(Deprivation of Rights Under 42 U.S.C. § 1983)
(Against All Defendants)

100. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 99 hereof as if more fully set forth at length herein.

101. The acts and practices undertaken by Defendants on the basis of Plaintiff's race, as described above, were unreasonable within the meaning of the Fourteenth Amendment to the United States Constitution and, in particular, the Equal Protection Clause thereof, and therefore violated Plaintiff's rights thereunder.

102. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR A TWELFTH CAUSE OF ACTION**
(Deprivation of Rights Under 42 U.S.C. § 1983)
(Against All Defendants)

103. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 102 hereof as if more fully set forth at length herein.

104. The acts and practices undertaken by Defendants on the basis of Plaintiff's religion, as described above, were unreasonable within the meaning of the Fourteenth Amendment to the United States Constitution and, in particular, the Equal Protection Clause thereof, and therefore violated Plaintiff's rights thereunder.

105. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
(Discrimination on the Basis of Race in Violation of N.Y. Exec. L. §§ 296(a) and 296(a)3-a(a))
(Against Downstate, HHC and KCHC)

106. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 105 hereof as if more fully set forth at length herein.

107. Defendants' various wrongful actions as described above were taken against Plaintiff on the basis of his race, and constituted discrimination against him with respect to his compensation, terms, conditions, and privileges of employment on the basis thereof, in violation of the Executive Law of the State of New York, and particularly Sections 296(a) and 296(a)3-a(a) thereof.

108. Defendants' actions were willful.

109. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION
(Discrimination on the Basis of Religion in Violation of N.Y. Exec. L. §§ 296(a) and 296(a)3-a(a))
(Against Downstate, HHC and KCHC)

110. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 109 hereof as if more fully set forth at length herein.

23

111. Defendants' various wrongful actions as described above were taken against Plaintiff on the basis of his religion, and constituted discrimination against him with respect to his compensation, terms, conditions, and privileges of employment on the basis thereof, in violation of the Executive Law of the State of New York, and particularly Sections 296(a) and 296(a)3-a(a) thereof.

112. Defendants' actions were willful.

113. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION**
(Discrimination on the Basis of Age in Violation of N.Y. Exec. L. §§ 296(a) and 296(a)3-a(a))
(Against Downstate, HHC and KCHC)

114. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 113 hereof as if more fully set forth at length herein.

115. Defendants' various wrongful actions as described above were taken against Plaintiff on the basis of his age, and constituted discrimination against him with respect to his compensation, terms, conditions, and privileges of employment on the basis thereof, in violation of the Executive Law of the State of New York, and particularly Sections 296(a) and 296(a)3-a(a) thereof.

116. Defendants' actions were willful.

117. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
(Retaliation in Violation of N.Y. Exec. L. § 296(a)7)
(Against Downstate, HHC and KCHC)

118. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 117 hereof as if more fully set forth at length herein.

119. Defendants' various wrongful actions described above, including, but not limited to, their adverse actions taken against Plaintiff for complaining of their discrimination and otherwise objecting to and opposing their various actions and practices which were in violation of the Executive Law of the State of New York, constituted unlawful retaliation against Plaintiff in violation of the Executive Law of the State of New York, and particularly Section 296(a)7 thereof.

120. Defendants' actions were willful.

121. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION
(Aiding and Abetting Racial Discrimination in Violation of N.Y. Exec. L. § 296(a)6)
(Against Reede, Pulitzer and John and Jane Does 1-20)

122. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 121 hereof as if more fully set forth at length herein.

123. By their various wrongful actions as described above, Defendants aided and abetted, or attempted to aid and abet, the doing of various racially discriminatory acts forbidden by the Executive Law of the State of New York, in violation of Section 296(a)6 thereof.

124. Defendants' actions were willful.

125. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR AN EIGHTEENTH CAUSE OF ACTION**
(Aiding and Abetting Religious Discrimination in Violation of N.Y. Exec. L. § 296(a)6)
(Against Reede, Pulitzer and John and Jane Does 1-20)

126.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 125 hereof as if more fully set forth at length herein.

127.     By their various wrongful actions as described above, Defendants aided and abetted, or attempted to aid and abet, the doing of various religiously discriminatory acts forbidden by the Executive Law of the State of New York, in violation of Section 296(a)6 thereof.

128.     Defendants' actions were willful.

129.     As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR A NINETEENTH CAUSE OF ACTION**
(Aiding and Abetting Age Discrimination in Violation of N.Y. Exec. L. § 296(a)6)
(Against Reede, Pulitzer and John and Jane Does 1-20)

130.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 129 hereof as if more fully set forth at length herein.

131.     By their various wrongful actions as described above, Defendants aided and abetted, or attempted to aid and abet, the doing of various age discriminatory acts forbidden by the Executive Law of the State of New York, in violation of Section 296(a)6 thereof.

132.     Defendants' actions were willful.

133.     As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

26

## AS AND FOR A TWENTIETH CAUSE OF ACTION
(Aiding and Abetting Retaliation in Violation of N.Y. Exec. L. § 296(a)6)
(Against Reede, Pulitzer and John and Jane Does 1-20)

134. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 133 hereof as if more fully set forth at length herein.

135. By their various wrongful actions as described above, Defendants aided and abetted, or attempted to aid and abet, the doing of various retaliatory acts forbidden by the Executive Law of the State of New York, in violation of Section 296(a)6 thereof.

136. Defendants' actions were willful.

137. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A TWENTY-FIRST CAUSE OF ACTION
(Discrimination on the Basis of Race in Violation of N.Y.C. Admin. Code § 8-107.1(a))
(Against HHC and KCHC)

138. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 137 hereof as if more fully set forth at length.

139. Defendants' various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, were taken against Plaintiff on the basis of his race, and constituted discrimination against him with respect to his compensation, terms, conditions, and privileges of employment on the basis thereof, in violation of the Administrative Code of the City of New York, and particularly Section 8-107.1(a) thereof.

140. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A TWENTY-SECOND CAUSE OF ACTION
(Discrimination on the Basis of Religion in Violation of N.Y.C. Admin. Code § 8-107.1(a))
(Against HHC and KCHC)

141. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 140 hereof as if more fully set forth at length.

142. Defendants' various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, were taken against Plaintiff on the basis of his religion, and constituted discrimination against him with respect to his compensation, terms, conditions, and privileges of employment on the basis thereof, in violation of the Administrative Code of the City of New York, and particularly Section 8-107.1(a) thereof.

143. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A TWENTY-THIRD CAUSE OF ACTION
(Discrimination on the Basis of Age in Violation of N.Y.C. Admin. Code § 8-107.1(a))
(Against HHC and KCHC)

144. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 143 hereof as if more fully set forth at length.

145. Defendants' various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, were taken against Plaintiff on the basis of his age, and constituted discrimination against him with respect to his compensation, terms, conditions, and privileges of employment on the basis thereof, in violation of the Administrative Code of the City of New York, and particularly Section 8-107.1(a) thereof.

146. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

### AS AND FOR A TWENTY-FOURTH CAUSE OF ACTION
( Retaliation in Violation of N.Y.C. Admin. Code § 8-107.7)
(Against HHC and KCHC)

147.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 146 hereof as if more fully set forth at length.

148.    Defendants' various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, including, but not limited to, their discharge of Plaintiff, as well as the other adverse actions taken against him for objecting to and/or opposing their various actions and practices which were in violation of the Administrative Code of the City of New York, constituted unlawful retaliation against Plaintiff in violation of said Administrative Code, and particularly Section 8-107.7 thereof.

149.    As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

### AS AND FOR A TWENTY-FIFTH CAUSE OF ACTION
(Aiding and Abetting Racial Discrimination in Violation of
N.Y.C. Admin. Code § 8-107.6)
(Against Reede, Pulitzer and John and Jane Does 1-20)

150.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 149 hereof as if more fully set forth at length.

151.    By their various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, Defendants aided and abetted, or attempted to aid and abet, the doing of various racially discriminatory acts forbidden by the Administrative Code of the City of New York, and in particular, in violation of Section 8-107.6 thereof.

152.    As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR A TWENTY-SIXTH CAUSE OF ACTION**
(Aiding and Abetting Religious Discrimination in Violation of
N.Y.C. Admin. Code § 8-107.6)
(Against Reede, Pulitzer and John and Jane Does 1-20)

153. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 152 hereof as if more fully set forth at length.

154. By their various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, Defendants aided and abetted, or attempted to aid and abet, the doing of various religiously discriminatory acts forbidden by the Administrative Code of the City of New York, and in particular, in violation of Section 8-107.6 thereof.

155. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

**AS AND FOR A TWENTY-SEVENTH CAUSE OF ACTION**
(Aiding and Abetting Age Discrimination in Violation of
N.Y.C. Admin. Code § 8-107.6)
(Against Reede, Pulitzer and John and Jane Does 1-20)

156. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 155 hereof as if more fully set forth at length.

157. By their various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, Defendants aided and abetted, or attempted to aid and abet, the doing of various age discriminatory acts forbidden by the Administrative Code of the City of New York, and in particular, in violation of Section 8-107.6 thereof.

158. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## AS AND FOR A TWENTY-EIGHTH CAUSE OF ACTION
(Aiding and Abetting Retaliation in Violation of
N.Y.C. Admin. Code § 8-107.6)
(Against Reede, Pulitzer and John and Jane Does 1-20)

159. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 158 hereof as if more fully set forth at length.

160. By their various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, Defendants aided and abetted, or attempted to aid and abet, the doing of various retaliatory acts forbidden by the Administrative Code of the City of New York, and in particular, in violation of Section 8-107.6 thereof.

161. As a result of Defendants' wrongful conduct, Plaintiff has suffered, and will continue to suffer, irreparable injury, lost wages and benefits, other monetary damages, mental anguish, emotional distress, humiliation and other compensable damages, all in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for the following relief:

(a)   actual, compensatory, incidental, consequential, liquidated and all other damages available under applicable law, each and all in amounts to be determined at trial, on each (and all) claim(s) with respect to which, and against each (and all) Defendant(s) against whom, such damages are awardable;

(b)   back pay, back bonuses, back pension and related retirement contributions, benefits, and all other compensation, remuneration and entitlements Plaintiff would have received absent Defendants' wrongful conduct, each and all in amounts to be determined at trial;

(c)   reinstatement, or front pay in lieu thereof, in an amount to be determined at trial;

(d)   punitive damages, in an amount to be determined at trial, as against all Defendants against whom punitive damages are awardable;

(e)   all actual costs, expenses and disbursements recoverable under applicable law and rules of court;

(f)   reasonable attorney's fees;

(g)   fees for experts and professionals;

(h)      interest on all of the foregoing amounts;

(i)      all permanent injunctive relief available and appropriate against each, and all, of the Defendants under applicable law including, but not limited to, promotion of Plaintiff to Director of ER Radiology, retroactive to the date of Defendants' denial thereof, with all of the rights, privileges, benefits and perquisites appurtenant thereto, as well as a permanent injunction against any retaliation by all Defendants, or any of them, against Plaintiff;

(j)      all declaratory relief available and appropriate against each, and all, of the Defendants under applicable law including, but not limited to declarations that the Defendants, as hereinabove alleged: violated the various statutes and common law cited herein; unlawfully denied Plaintiff promotion to Director of ER Radiology; unlawfully discharged Plaintiff; denied and/or otherwise interfered with Plaintiff's FMLA rights; discriminated against Plaintiff on the basis of his race, religion and/or age; aided and abetted same; violated Plaintiff's federal Constitutional right to equal protection of the laws; retaliated against Plaintiff for engaging in conduct protected by law; and aided and abetted same; and

(k)      all other relief available under applicable law which this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury upon each and every one of the causes of action asserted herein, and otherwise, with respect to which a trial by jury may be had.

Dated: New York, New York
December 23, 2015

ERIC M. NELSON (EN-4307)
Attorney at Law

_____\s_____
112 Madison Avenue, Sixth Floor
New York, New York 10016
(212) 354-3666
Attorney for Plaintiff