UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

ODED GREENBERG,

Plaintiff,

-against-

STATE UNIVERSITY HOSPITAL-DOWNSTATE
MEDICAL CENTER a/ka/ THE STATE UNIVERSITY
OF NEW YORK HEALTH SCIENCE CENTER AT
BROOKLYN aka SUNY DOWNSTATE MEDICAL
CENTER, NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, KINGS COUNTY
HOSPITAL CENTER, UNITED UNIVERSITY
PROFESSIONALS, SUNY DOWNSTATE MEDICAL
CENTER CHAPTER OF UNITED UNIVERSITY
PROFESSIONALS, DEBORAH L. REEDE, STEVEN
PULITZER, and JOHN and JANE DOES 1-20,

Defendants.

-------------------------------------------------------------------X

**HEALTH + HOSPITALS
DEFENDANTS' LOCAL
RULE 56.1 STATEMENT
OF MATERIAL
UNDISPUTED FACTS**

15-CV-2343 (PKC)(VMS)

Pursuant to Local Rule 56.1 of the Civil Rules of the United States District Court

for the Eastern District of New York, defendants, New York City Health + Hospitals Corporation

("HHC") and Kings County Hospital Center ("KCHC") (hereinafter collectively "Health +

Hospitals defendants"), submit this Statement of Undisputed Material Facts.

**A.      Background**

1. Plaintiff Oded Greenberg is a board-certified radiologist authorized to practice

in the State of New York who was formerly employed as a physician and radiologist by

defendant State University of New York, Downstate Medical Center ("Downstate"), and

assigned (at times) via an affiliation agreement to KCHC. *See* Dkt. No. 17 Second Amended Complaint, May 11, 2016 ("SAC"), Ex. "A," *passim.*[1]

2. Defendant Deborah Reede ("Reede") is employed by Downstate as a professor and Chairperson of the Department of Radiology. Id. at ¶5.

3. Defendant Stephen Pulitzer ("Pulitzer") is employed by Downstate as an assistant professor, and assigned via an affiliation agreement to KCHC. Id. at ¶6.

4. Alan Kantor is a radiologist formerly employed by Downstate as a Clinical Assistant Professor in the Department of Radiology at Downstate. *See* Kantor employee change status form, Ex. "B," SUNY001849.

5. Plaintiff responded to a job posting by Downstate and was hired in early 2001. Plaintiff was hired via a letter from Dr. David Stark ("Stark"), then Professor and Chairman of the Downstate Department of Radiology. The letter from Dr. Stark was printed on SUNY Downstate letterhead and does not reference Health + Hospitals defendants other than citing an affiliation agreement. *See* Plaintiff's Downstate Medical Center Personnel File ("Personnel File"), Ex. "C," at SUNY000218 & SUNY000207.

6. Plaintiff's was hired as an "Assistant Professor of Clinical Radiology" pursuant to an affiliation agreement between Downstate and Defendant HHC. Id. at SUNY000207 and SUNY000219.

7. Plaintiff's employment eligibility was verified to the United States Department of Justice on March 16, 2001 and his employer was listed as Downstate. Id. at SUNY000223.

---

[1] Unless otherwise indicated, references to "Ex." are to the exhibits which are annexed to the Declaration of Ryan G. Shaffer, dated March 26, 2018 ("Shaffer Decl."), submitted in support of Health + Hospitals defendants' Motion for Summary Judgment.

8. Plaintiff's employment was verified by Downstate when he applied for a mortgage with Citibank. Id. at SUNY000001-000002 and SUNY000025.

9. Defendants HHC and KCHC were not involved in the hiring of plaintiff, and his Downstate personnel file is replete with indications that he was hired by Downstate. Id. *passim*, *see also* Deposition of Ghassan Jamaleddine ("Jamaleddine Tr."), Ex. "D," at 94:16-23.

10. As an employee of Downstate, plaintiff was a member of United University Professions ("UUP"), a union representing nearly all of the physicians employed by Defendant SUNY, and was subject to the terms of the collective bargaining agreement between UUP and the State of New York. *See* Deposition of Oded Greenberg ("Pl. Tr."), Ex. "E," at 370:4-9 *see also* Union Agreement, Ex. "F," at SUNY 001620-001748.

11. As a member of UUP, plaintiff was only subject to discipline pursuant to article 19 of the agreement between UUP and the State of New York, which states "discipline shall be imposed upon employees only pursuant to this article." Health + Hospitals defendants were not a party to the agreement between UUP and the State of New York. *See* Union Agreement, Ex. "F," at SUNY001637-001638.

12. Plaintiff was paid by the State of New York and received pay increases pursuant to the agreement between UUP and the State of New York. *See* Personnel File, Ex. "C," at SUNY000050, SUNY000056 and SUNY000060.

13. Plaintiff's health insurance and related benefits were provided by virtue of his employment at Downstate. Id. at SUNY000092-93 and SUNY000105-106.

14. Plaintiff's time and attendance records were maintained by Downstate. *See* Time and Attendance Records, Ex. "G," at SUNY001750-001813.

15. Plaintiff temporarily resigned from his employment in April 2008, via letter to Dr. Salvatore Scalfani, then the Chairman of the Department of Radiology at Downstate. *See* Personnel File, Ex. "C," at SUNY000070.

16. On October 19, 2009, while plaintiff was working part-time as an hourly employee, Dr. Scalfani unilaterally reassigned plaintiff from KCHC to University Hospital, a facility maintained by the State University of New York. Id. at SUNY000075.

17. In 2010, plaintiff was rehired to a full time position by Dr. Scalfani via letter written on Downstate letterhead. Plaintiff was re-hired as a "clinical assistant professor of radiology" in the College of Medicine of the State University of New York Downstate Medical Center. The position was subject to the approval of the Dean and President of SUNY Downstate Medical Center, Ian Taylor, M.D., and required only funding approval from HHC. *See* September 21, 2010 rehire letter, Ex. "H".

18. Throughout his employment plaintiff was supervised by defendant Pulitzer, Dr. Alan Kantor, and Dr. Scalfani. *See* Pl. Tr., Ex. "E," at 44:3-45:5.

19. Plaintiff acknowledges that his employer was Downstate, but nevertheless contends that Health + Hospitals defendants were "joint/co-employers" with Downstate, Reede, and Pulitzer (hereinafter "Downstate defendants"). *See* Plaintiff's Responses and Objections to Health + Hospitals Defendants' First Set of Contention Interrogatories ("cont. rog. resp.), Ex. "I," *passim, see also* Pl. Tr., Ex "E," at 373:10-375:4.

**B.     Affiliation Agreement**

20. The affiliation agreement ("the agreement") under which plaintiff was assigned to work at KCHC classifies plaintiff as a "physician provider", refers to HHC as "the

Corporation", and to Downstate as "the Affiliate". *See* Affiliation Agreement, Ex. "J," at SUNY001011 and SUNY001015.

21. The agreement provides that "[Downstate] may follow its own internal personnel policies and procedures with respect to hiring Physician Providers." Id. at SUNY001022.

22. The agreement provides no mechanism for Health + Hospitals defendants to terminate a Physician Provider. Id. at *passim*.

23. The agreement only allows HHC to "request in writing that the affiliate no longer assign such person to the facility." Additionally, upon making such a request to have a Physician Provider reassigned, Health + Hospitals defendants must "provide a written justification for such a request . . . and a reasonable opportunity to cure if the issue does not involve a threat to patient health or safety." Id. at SUNY001056-001057.

24. The agreement requires Downstate to maintain the time and attendance records of physician providers. Id. at SUNY001057-001558.

25. The agreement requires Downstate to ensure that physician providers are qualified for employment. Id. at SUNY001025-001029.

26. The agreement contemplates that in the performance of duties pursuant to the agreement, physician providers are considered employees of Downstate. Id. at SUNY001079.

27. The agreement clearly establishes that Health + Hospitals and Downstate defendants have separate management, ownership, and control. Id. *passim.*

## C.  Plaintiff's Termination

28. On May 5, 2014, and again on August 22, 2014, plaintiff was warned about the need to accurately report his time and attendance, as well as the need to report on time for his scheduled shift of 9:30 a.m. to 5:30 p.m. *See* August 22, 2014 Letter, Ex. "K," HHC1241.

29. On September 3, 2014, plaintiff was informed via letter by defendant Pulitzer that he was not authorized to take leave from September 4, 2014 through September 5, 2014. The letter directed plaintiff to report to work on those dates, and that a failure to do so would result in a referral to Downstate Labor Relations. *See* September 3, 2014 Letter, Ex. "L," HHC1206.

30. Plaintiff did not appear for work on September 4, 2014 or September 5, 2014, and as a result was directed to appear at the Downstate Labor Relations Office. *See* Pl. Tr. Ex. "E," at 242:4-250:22.

31. On or about September 8, 2014, plaintiff entered into a settlement with Downstate to resolve allegations of 1) unscheduled absences, 2) tardiness, 3) interfering with departmental operations, 4) insubordination, and 5) misrepresenting hours worked on his timesheets. A penalty up to and including termination was held in abeyance so long as plaintiff did not engage in any similar conduct. Additionally, pursuant to the settlement agreed to with Downstate, plaintiff was placed on "time and attendance watch". Health + Hospitals defendants were not a party to the settlement agreement nor did they participate in any of the proceeding or negotiations leading to it. *See* Settlement Agreement, Ex. "M," SUNY000012-000013.

32. On or about September 24, 2014, defendant Pulitzer reported two incidents involving plaintiff. The first incident involved an unauthorized leave of absence in violation of the September 8, 2014 agreement. The second involved the use of unauthorized attestations on patient medical records. *See* September 24, 2014 Letter, Ex. "N," HHC1522-1524.

33. On October 10, 2014, plaintiff was questioned by the Downstate Labor Relations Office in regards to the issues referenced in the September 24, 2014 letter. At that time it was determined that plaintiff had violated the terms of the September 8, 2014 settlement agreement. On October 20, 2014, plaintiff was afforded an opportunity to explain why he should not be terminated as a result of the incidents described in the September 2014 letter. By letter dated October 22, 2014, plaintiff was informed by Downstate Labor Relations' Assistant Vice President, Leonzo Cuiman that he was being terminated effective immediately. *See* October 22, 2014 Letter, Ex. "O," SUNY001275.

34. The decision to terminate plaintiff was made jointly by Leonzo Cuiman, Assistant Vice President of Downstate Labor Relations, and Stephanie Bernadel, Senior Personnel Associate in the Downstate Labor Relations Office, along with Adriana Conde-Billy, Director of Downstate Labor Relations, and defendant Reede. without input from any HHC or KCHC employee. *See* Deposition Leonzo Cuiman, ("Cuiman Tr."), Ex. "P," at 6:25-7:4; 63:20-64:4; 221:8-222:14; and 231:7-9;

35. Ms. Bernadel did not speak with any HHC employees in connection with the investigation into Plaintiff's behavior, nor was anyone from KCHC notified when plaintiff was terminated. *See* Deposition of Stephanie Bernadel ("Bernadel Tr."), Ex. "Q," at 214:2-6 and 305:8-21, *see also* Cuiman Tr., Ex. "P," at 222:17-19.

36. Dr. Ghassan Jamaleddine, then the Chief Medical Officer of KCHC, was never told by anyone that they wanted plaintiff fired, never asked anyone himself to see to it that plaintiff would be fired, or even indicated that he himself wanted plaintiff to be fired. *See* Jamaleddine Tr., Ex. "D," at 179:18-180:6.

## C.    Alleged Discrimination

37. Plaintiff alleges that his termination was part of an effort by defendant Reede to "reduce the number of non-black (principally White/Caucasian), and particularly Jewish, physicians and other personnel in the department [of radiology], and increase the number who were/are Black (African-or Caribbean American), non-Jewish and largely, if not uniformly, younger." *See* SAC, Ex "A," at ¶17.

38. Plaintiff alleges that the alleged discriminatory effort by defendant Reede included such actions as "the outright discharge of several White, Jewish and/or older physicians and other personnel; the slashing of the compensation of other White (including Jewish) and/or older physicians and other personnel who were not immediately discharged (while the compensation of Black, non-Jewish and/or younger physicians was maintained); and the micro-management of those physicians in the conduct of their daily duties." Id at ¶¶17-20.

39. Plaintiff alleges that defendant Reede "made statements which disparaged and/or stereotyped Jews, cast them in a negative light, or otherwise made clear her plain and obvious bias against them on the basis of their race and religion. Id. at ¶21.

40. Plaintiff's only support for the aforementioned allegations is inadmissible hearsay. *See* Pl. Tr., Ex. "E," 510:20-519:7.

41. The termination of other non-parties was for legitimate non-discriminatory reasons. Specifically, upon information and belief as set forth in the record, a restructuring of the Downstate Radiology Department took place following a report by the Accreditation Council for Graduate Medical Education ("ACGME"), that placed the department on probation. *See* ACGME Report, Ex. "R", *passim, see also* Deposition of Dr. Deborah Reede ("Reede Tr."), Ex. "S," 67:12-97:12.

42. Plaintiff does not believe that Dr. Jamaleddine discriminated against him. *See*

Pl. Tr., Ex. "E", at 463:10-25.

Dated:      New York, New York
            March 26, 2018

**ZACHARY W. CARTER**
Corporation Counsel of the
  City of New York
Attorney for Defendant
100 Church Street, Room 2-146
New York, New York 10007-2601
(212) 356-5037
rshaffer@law.nyc.gov

By: _____/s/ Ryan G. Shaffer_____
            Ryan G. Shaffer
            Assistant Corporation Counsel

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ODED GREENBERG,

Plaintiff,

- against -

STATE UNIVERSITY HOSPITAL-DOWNSTATE
MEDICAL CENTER a/ka/ THE STATE UNIVERSITY OF
NEW YORK HEALTH SCIENCE CENTER AT
BROOKLYN aka SUNY DOWNSTATE MEDICAL
CENTER, NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, KINGS COUNTY
HOSPITAL CENTER, UNITED UNIVERSITY
PROFESSIONALS, SUNY DOWNSTATE MEDICAL
CENTER CHAPTER OF UNITED UNIVERSITY
PROFESSIONALS, DEBORAH L. REEDE, STEVEN
PULITZER, and JOHN and JANE DOES 1-20,

Defendants.

**HEALTH + HOSPITALS DEFENDANTS'
LOCAL RULE 56.1 STATEMENT OF
MATERIAL
UNDISPUTED FACTS**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street, Room 2-146
New York, NY 10007-2601

Of Counsel: Ryan G. Shaffer
Tel: (212) 356-5037
rshaffer@law.nyc.gov
Our No. 2015-047890

*Due and timely service is hereby admitted.*

New York, N.Y............................................., 2018