Index No. 15-CV-2343 (PKC)(VMS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ODED GREENBERG,

                         Plaintiff,

        -against-

STATE UNIVERSITY HOSPITAL-DOWNSTATE
MEDICAL CENTER a/ka/ THE STATE UNIVERSITY
OF NEW YORK HEALTH SCIENCE CENTER AT
BROOKLYN aka SUNY DOWNSTATE MEDICAL
CENTER, NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, KINGS COUNTY
HOSPITAL CENTER, UNITED UNIVERSITY
PROFESSIONALS, SUNY DOWNSTATE MEDICAL
CENTER CHAPTER OF UNITED UNIVERSITY
PROFESSIONALS, DEBORAH L. REEDE, STEVEN
PULITZER, and JOHN and JANE DOES 1-20,

                         Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
HEALTH + HOSPITALS DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Health + Hospitals Defendants*
*100 Church Street - Room 2-146*
*New York, NY 10007*

*Of Counsel: Ryan G. Shaffer*
*Tel: (212) 356-5037*
*Matter No. 2015-047890*

# TABLE OF CONTENTS

|  | **Page** |
|---|---|
| TABLE OF AUTHORITIES | iii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| STANDARD OF REVIEW | 2 |

ARGUMENT

POINT I

KINGS COUNTY HOSPITAL CENTER LACKS THE CAPACITY TO BE SUED ......... 4

POINT II

HEALTH + HOSPITALS DEFENDANTS WERE NOT PLAINTIFF'S EMPLOYER ......... 4

1. Health + Hospitals Defendants and SUNY Were Not a Single Employer. ......... 5

2. Health + Hospitals Defendants Were Not a Joint Employer with SUNY ......... 6

    i. Health + Hospitals Defendants Did Not and Could Not Terminate Plaintiff's Employment. ......... 7

    ii. Health + Hospitals Defendants Could Not and Did Not Hire Plaintiff ......... 9

    iii. Health + Hospitals Defendants Did Not and Could Not Discipline Plaintiff ......... 11

    iv. Health + Hospitals Defendants Did Not Control Plaintiff's Pay, Insurance, or Employment Records ......... 12

    v. Health + Hospitals Defendants Did Not Supervise Plaintiff ......... 13

vi. Health + Hospitals Defendants Did Not Participate in the Collective Bargaining Process ................................................................. 13

vii. Plaintiff's Perception of Who Employed Him is Irrelevant to the Joint Employer Inquiry ................................................................. 14

POINT III

PLAINTIFF'S FAMILY AND MEDICAL LEAVE ACT CLAIMS MUST BE DISMISSED EVEN IF HEALTH + HOSPITALS DEFENDANTS ARE DEEMED PLAINTIFF'S JOINT EMPLOYER BECAUSE THEY WERE NOT HIS PRIMARY EMPLOYER ................................................................. 15

POINT IV

HEALTH + HOSPITALS DEFENDANTS DID NOT KNOW OF THE ALLEGED DISCRIMINATORY CONDUCT ................................................................. 16

CONCLUSION ................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                             **Pages**

Affrunti v. Long Island Univ.,
No. 04-2710-cv, 2005 U.S. App. LEXIS 12372 (2d Cir. June 22, 2005)................................3

Arculeo v. On-Site Sales & Mktg., LLC,
425 F.3d 193 (2d Circ. 2005)................................................................................5, 6

Ayala v. Bellevue Hosp.,
1999 U.S. Dist. LEXIS 12982 (S.D.N.Y. Aug. 19, 1999)........................................................4

Back v.Hastings on Hudson Union Free Sch. Dist.,
365 F.3d 107 (2d Cir. 2004) ....................................................................................17

BellSouth Telecomms., Inc., v. W.R. Grace & Co.,
77 F. 3d 603 (2d Cir. 1996) ........................................................................................3

Bickerstaff v. Vassar Coll.,
196 F.3d 435 (2d Cir. 1998) ........................................................................................3

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)..................................................................................................2

Clinton's Ditch Cooperative Co. v. NLRB,
778 F.2d 137 (2d Cir. 1985) ..................................................................................6, 8

Conde v. Sisley Cosmetics USA, Inc.,
No. 11 CIV. 4010 (RJS),
2012 U.S. Dist. LEXIS 72726 (S.D.N.Y. May 23, 2012) ................................................7

Cook v. Arrowsmith Shelburne, Inc.,
69 F.3d 1235 (2d Cir. 1995) ......................................................................................5

Creddille v. MTA N.Y. City Transit Auth. & Core Envtl. Corp.,
11-CV-5442 (SLT)(RLM),
2014 U.S. Dist. LEXIS 88426 (E.D.N.Y. June 25, 2014) ............................................13

Davis v. City of New York,
1998 U.S. Dist. LEXIS 668 (S.D.N.Y. Jan. 26, 1998) ................................................4

Dawson v. County of Westchester,
373 F.3d 265 (2d Cir. 2004) ......................................................................................3

**Cases**                                                                                                                    **Pages**

Dwyer v. Horne,
No. 12 CV 1176 (NG) (VMS),
2017 U.S. Dist. LEXIS 186126 (E.D.N.Y. Nov. 8, 2017)................................................8

Eisenberg v. Advance Relocation & Storage, Inc.,
237 F.3d 111 (2d Cir. 2000) ................................................5

Forbes v. Lighthouse Int'l,
No. 11 Civ. 7065, 2013 U.S. Dist. LEXIS 62454 (S.D.N.Y. May 1, 2013)................................3

Gonzalez v. Allied Barton Sec. Servs.,
2010 U.S. Dist. LEXIS 101846 (S.D.N.Y. Sept. 7, 2010),
*report and recommendation adopted*
2010 U.S. Dist. LEXIS 101265 (S.D.N.Y. Sept. 27, 2010)................................................8

Goodman v. Port Auth. Of N.Y. & N.J.,
850 F. Supp. 2d 363 (S.D.N.Y. 2012) ................................................5

Green v. Jacob & Co. Watches,
248 F. Supp. 3d 458 (S.D.N.Y. 2017) ................................................16, 17

Griffin v. Sirva, Inc.,
29 N.Y.3d 174 (N.Y. 2017) ................................................6

Gulino v. N.Y. State Educ. Dep't,
460 F.3d 361 (2d Cir. 2006) ................................................4

LaMarch v. Tishman Speyer Props., L.P.,
No. 03-CV-5246, 2006 U.S. Dist. LEXIS 55006 (E.D.N.Y. Aug. 7, 2006) ................................18

Lima v. Addeco,
634 F. Supp. 2d 394 (S.D.N.Y. 2009),
aff'd, 375 F. App'x 54 (2d Cir. 2010) ................................................5, 16, 17

Liotard v. FedEx Freight Corp.,
No. 14-cv-2083, 2016 U.S. Dist. LEXIS 34754 (S.D.N.Y. March 17, 2016)................................7

Martin v. Purolator Courier,
94 CV 1004 (FB), 1996 U.S. Dist. LEXIS 22300 (E.D.N.Y. July 26, 1996)................................13

McCray v. City University of New York,
2011 U.S. Dist. LEXIS 31326 ................................................8

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973)................................................17

| **Cases** | **Pages** |
|---|---|

Melman v Montefiore Med. Ctr.,
98 A.D.3d 107, 946 N.Y.S.2d 27 (1st Dep't 2012) ..................................................17

Ochei v. Coler/Goldwater Mem'l Hosp.,
450 F. Supp. 2d 275 (S.D.N.Y. 2006) ......................................................................4

Saleh v. Pretty Girl, Inc.,
2012 U.S. Dist. Lexis 142570 (E.D.N.Y. 2012)........................................................5

SEIU Local 32BJ v. NLRB,
647 F.3d 435 (2d Cir. 2011) ...................................................................................13

Shiflett v. Scores Holding Co.,
601 Fed. Appx. 28 (2d Cir. 2015)..........................................................................6, 7

St. Jean v. Orient-Express Hotels Inc.,
963 F. Supp. 2d 301 (S.D.N.Y. Aug. 7, 2013) .........................................................7

St. Mary's Honor Ctr. v. Hicks,
509 U.S. 502 (1981)................................................................................................17

Voltaire v. Home Servs. Sys.,
823 F. Supp. 2d 77 (E.D.N.Y. 2011) ........................................................................6

Weiss v. Hustedt Chevrolet,
05-CV-4230 (DRH)(MLO),
2009 U.S. Dist. LEXIS 59408 (E.D.N.Y. July 13, 2009)........................................ 4-5

Wright v. Coughlin,
132 F.3d 133 (2d Cir. 1998) .....................................................................................3

**Statutes**

29 C.F.R. § 825.104(a) ...................................................................................................4

29 C.F.R. § 826.106.......................................................................................................14

29 C.F.R. § 826.106(c) ..................................................................................................14

42 U.S.C. §1981..............................................................................................................1

42 U.S.C. §1983.........................................................................................................1, 17

42 U.S.C. § 2000e(b) ......................................................................................................4

Fed. R. Civ. P. 56(c) .......................................................................................................2

| **Statutes** | **Pages** |
|---|---|

Local Rule 56.1 .................................................................................................2

N.Y. Admin. Code § 8-102 .................................................................................4

N.Y. City Charter § 396 .....................................................................................3

N.Y. Exec. Law § 292 .........................................................................................4

**Other Authorities**

N.Y. Unconsol. Laws § 7385(1) (McKinney 1979) ............................................4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

ODED GREENBERG,

                                                    Plaintiff,     15-CV-2343 (PKC)(VMS)

                  -against-

STATE UNIVERSITY HOSPITAL-DOWNSTATE
MEDICAL CENTER a/ka/ THE STATE UNIVERSITY
OF NEW YORK HEALTH SCIENCE CENTER AT
BROOKLYN aka SUNY DOWNSTATE MEDICAL
CENTER, NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, KINGS COUNTY
HOSPITAL CENTER, UNITED UNIVERSITY
PROFESSIONALS, SUNY DOWNSTATE MEDICAL
CENTER CHAPTER OF UNITED UNIVERSITY
PROFESSIONALS, DEBORAH L. REEDE, STEVEN
PULITZER, and JOHN and JANE DOES 1-20,

                                                    Defendants.

---------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF HEALTH + HOSPITALS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff, a former radiologist employed by the State University of New York Downstate

Medical Center ("SUNY") and assigned to the radiology department at Kings County Hospital

Center ("KCHC") pursuant to an affiliation agreement, brings this action pursuant to Title VII of

the Civil Rights Acts of 1964, 42 U.S.C. §§1981 and 1983, the Fourteenth Amendment to the

United States Constitution, the Family and Medical Leave Act ("FMLA"), the New York State

Human Rights Law ("NYSHRL"), and the New York City  Human Rights Law ("NYCHRL").

Specifically, Plaintiff alleges that he was unlawfully denied FMLA leave, discriminated against

on the basis of his religion (Judaism), race (Caucasian), and age, suffered retaliation upon complaining about the aforementioned treatment, and unlawfully terminated by the defendants.

Defendants New York City Health and Hospitals Corporation ("HHC") and Kings County Hospital Center ("KCHC") (hereinafter collectively "Health + Hospitals Defendants") now move for Summary Judgment dismissing the second amended complaint (hereinafter "SAC") because no genuine issue of material fact exists precluding judgment for Health + Hospitals Defendants as a matter of law on the grounds that: (1) KCHC is not a suable entity; (2) Health + Hospitals Defendants were not Plaintiff's employer; (3) plaintiff cannot establish a *prima facie* case of discrimination under Title VII; (4) even if plaintiff could establish a *prima facie* claim, Health + Hospitals Defendants have articulated legitimate, non-discriminatory reasons that cannot be shown to be pre-textual as a matter of law; and (5) plaintiff's rights under the FMLA were not violated.

## STATEMENT OF FACTS

The Court is respectfully referred to Health + Hospitals Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, dated March 26, 2018 ("Defs.' 56.1") for a statement of pertinent and material facts. Unless otherwise stated, all exhibit references are to those annexed to the Declaration of Assistant Corporation Counsel Ryan G. Shaffer in Support of Health + Hospitals Defendants' Motion for Summary Judgment executed on March 26, 2018 ("Shaffer Decl.").

## STANDARD OF REVIEW

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The

2

moving party should prevail where it points to an absence of evidence on an issue on which the non-movant bears the burden of proof. *See* Celotex, 477 U.S. at 322. Although the moving party bears the initial burden to show that there is no genuine issue of material fact, the non-moving party cannot rely in opposition on conclusory allegations or speculation and must set forth specific facts, based on admissible evidence, showing that there is a genuine issue of fact. *See* Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998); *see also* Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1998) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); BellSouth Telecomms., Inc., v. W.R. Grace & Co., 77 F. 3d 603, 615 (2d Cir. 1996) (it is insufficient to "merely to assert a conclusion without supplying supporting arguments or facts").

Moreover, not every disputed issue is material. *See* Affrunti v. Long Island Univ., No. 04-2710-cv, 2005 U.S. App. LEXIS 12372, at \*3 (2d Cir. June 22, 2005) (explaining that a fact is "material" if it affects the outcome of the suit and an issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party) (internal citations omitted); Forbes v. Lighthouse Int'l, No. 11 Civ. 7065, 2013 U.S. Dist. LEXIS 62454, at \*13 (S.D.N.Y. May 1, 2013) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.") (*citing* Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004)).

## ARGUMENT

### POINT I

### KINGS COUNTY HOSPITAL CENTER LACKS THE CAPACITY TO BE SUED

Plaintiff's complaint improperly names KCHC as a defendant. Section 396 of the New York City Charter states that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." Although an exception exists for HHC, no exception exists for KCHC or any other facilities under the auspices of defendant HHC. Rather, because KCHC is a facility belonging to HHC, by statute, HHC is the only entity that has the capacity to be sued. *See* N.Y. Unconsol. Laws § 7385(1) (McKinney 1979); *see also* Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275, 287-88 (S.D.N.Y. 2006); Ayala v. Bellevue Hosp., 1999 U.S. Dist. LEXIS 12982 (S.D.N.Y. Aug. 19, 1999); Davis v. City of New York, 1998 U.S. Dist. LEXIS 668 at *2, (S.D.N.Y. Jan. 26, 1998). Accordingly, all claims against KCHC must be dismissed.

### POINT II

### HEALTH + HOSPITALS DEFENDANTS WERE NOT PLAINTIFF'S EMPLOYER

In order to maintain a claim against Health + Hospitals Defendants pursuant to any of the statutes upon which he rests his claims, plaintiff must show that defendant HHC was his employer. Title VII, which creates a cause of action against employers that engage in discriminatory acts, defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . ." 42 U.S.C. § 2000e(b). The FMLA definition is identical but requires fifty or more employees, 29 C.F.R. § 825.104(a). Under the New York City

and State Human Rights Laws, an employer is defined as having at least four employees. N.Y. Exec. Law § 292, New York City , N.Y. Admin. Code § 8-102.

The existence of an employer-employee relationship is a primary element of Title VII and FMLA claims *See* Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 370 (2d Cir. 2006); *see also* 42 U.S.C. § 2000e(b)(defining an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees," as well as "any agent of such a person"); Weiss v. Hustedt Chevrolet, 05-CV-4230 (DRH)(MLO), 2009 U.S. Dist. LEXIS 59408, at *44-45 (E.D.N.Y. July 13, 2009). An employer-employee relationship is also required to sustain analogous claims under the NYSHRL and NYCHRL. *See* Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 113 (2d Cir. 2000). Although Plaintiff admits that he does not know whether HHC or any of the remaining defendants were his employer, he contends that HHC should be considered his employer for purposes of this action under the theory that the State University of New York Downstate Medical Center ("Downstate"), Deborah L. Reede ("Reede"), Steven Pulitzer ("Pulitzer") (collectively "Downstate" or "Downstate defendants") and HHC are joint employers. *See* Defs.' 56.1 ¶19.

"There are two exceptions to the rule that employment discrimination actions may be maintained only against a plaintiff's direct employer." Goodman v. Port Auth. Of N.Y. & N.J., 850 F. Supp. 2d 363, 386 (S.D.N.Y. 2012). The first is the single employer doctrine, and the second is the joint employer doctrine. Id. As assessed below, summary judgment for Health + Hospitals Defendants is warranted because neither exception applies in the present case.

### 1. Health + Hospitals Defendants and SUNY Were Not a Single Employer.

"The single employer doctrine applies when two nominally separate entities are actually part of a single integrated enterprise." Lima v. Addeco, 634 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2009), aff'd, 375 F. App'x 54 (2d Cir. 2010), (citing Arculeo v. On-Site Sales & Mktg., LLC,

425 F.3d 193, 198 (2d Circ. 2005)) (internal quotations omitted). The Second Circuit uses a four-prong test to determine whether multiple defendants constitute a single employer that looks to: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership of financial control." Saleh v. Pretty Girl, Inc., 2012 U.S. Dist. Lexis 142570 (E.D.N.Y. 2012) (citing Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995)). Applying these factors forecloses any reasonable contention under the single employer doctrine. It is clear that HHC is a distinct and wholly separate entities from Downstate. There is no common management, ownership, operations, or control between them. *See* Defs.' 56.1 ¶27. As such, HHC cannot be liable to plaintiff under a single employer theory.

**2. Health + Hospitals Defendants Were Not a Joint Employer with SUNY.**

Nor can plaintiff establish that Health + Hospitals Defendants and Downstate were joint employers to survive this motion. "In contrast [to single employer], a joint employer relationship involves separate legal entities which handle certain aspects of their employer-employee relationship jointly." Voltaire v. Home Servs. Sys., 823 F. Supp. 2d 77, 96 (E.D.N.Y. 2011) (*citing to* Clinton's Ditch Cooperative Co. v. NLRB, 778 F.2d 137 (2d Cir. 1985)) (internal quotations omitted). The joint employer doctrine holds that "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer." Arculeo, 425 F.3d at 198.

Although several tests exist for determining whether a joint employer relationship exists in the Second Circuit, the Circuit "ha[s] not yet fully described a test for what constitutes joint employment in the context of Title VII." Shiflett v. Scores Holding Co., 601 Fed. Appx. 28, 30 (2d Cir. 2015) (citing Arculeo, 425 F.3d at 199 n.7). A similar lack of certainty exists in the context of the FMLA, NYSHRL, and NYCHRL. *See* Voltaire, 823 F. Supp. 2d at 96-97 (finding

6

that joint employer doctrine applies to both the FMLA and NYSHRL but that no clear test has emerged).  In response to a certified question by the Second Circuit about the scope of the term "employer" in NYSHRL, the New York Court of Appeals answered that "common law principles . . . determine who may be liable as an employer . . . , with greatest emphasis placed on the alleged employer's power to order and control the employee in his or her performance of the work." Griffin v. Sirva, Inc., 29 N.Y.3d 174, 186 (N.Y. 2017).  Accordingly, courts in the Second Circuit have used a number of factors to determine whether a defendant qualifies as a joint employer in various contexts, including "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." Shiflett, 601 Fed. Appx. at 30 (*citing* St. Jean v. Orient-Express Hotels Inc., 963 F. Supp. 2d 301, 308 (S.D.N.Y. Aug. 7, 2013)).  Taken together, the circumstances of Plaintiff's employment with Downstate at HHC's facilities do not establish a joint employer relationship.

### i.  Health + Hospitals Defendants Did Not and Could Not Terminate Plaintiff's Employment.

First and foremost, Health + Hospitals Defendants neither terminated plaintiff's employment nor held the power to terminate him. *See* Defs.' 56.1 at ¶¶22-23 & 28-36.  The Affiliate Agreement ("Agreement") through which Plaintiff was assigned to work at KCHC provided no mechanism for how Health + Hospitals Defendants could terminate Plaintiff who is classified by the agreement as a Physician Provider. *See* Defs.' 56.1 at ¶¶20 & 22-23. Section 12.1 of the Agreement, entitled "Termination of Physician Providers, Post-Graduate Trainee and Students," grants to Health + Hospitals Defendants only the power to "request in writing that the Affiliate no longer assign such person to the facility." *See* Defs.' 56.1 at ¶23. The inability to terminate a person's employment, but rather only merely to request a reassignment, on its own vitiates any finding of joint employer liability. Liotard v. FedEx Freight Corp., No. 14-cv-2083,

7

2016 U.S. Dist. LEXIS 34754, at *15 (S.D.N.Y. March 17, 2016) (*citing* <u>Conde v. Sisley Cosmetics USA, Inc.</u>, No. 11 CIV. 4010(RJS), 2012 U.S. Dist. LEXIS 72726, at *12-13 (S.D.N.Y. May 23, 2012).

Further, upon making a request to have a Physician Provider reassigned, Health + Hospitals Defendants must "provide a written justification for such a request . . . and a reasonable opportunity to cure if the issue does not involve a threat to Patient health or safety." *See* Defs.' 56.1 at ¶23. This additional stipulation not only means that Health + Hospitals Defendants would have had to justify such a request to Downstate, but that Health + Hospitals Defendants could not even request that a Physician Provider be transferred from their post at KCHC without intervention from Downstate unless it was due to safety concerns.

Notably here, Health + Hospitals Defendants did not request plaintiff's transfer from KCHC. Yet, even had they done so, and had that request been acted upon, they still could not be held liable as a joint employer. The Second Circuit has held that "any business has a legitimate interest in determining if its subcontractor's employees have offended its customers or have otherwise provided unsatisfactory service. . . . An employer need not mutely suffer incompetence or misbehavior by its subcontractor's employees in order to avoid status as a joint employer." <u>Dwyer v. Horne</u>, No. 12 CV 1176 (NG) (VMS), 2017 U.S. Dist. LEXIS 186126, at *17 (E.D.N.Y. Nov. 8, 2017) *citing* <u>Clinton's Ditch</u>. In fact, courts in this Circuit have held that the ability to request a transfer or reassignment does not give rise to an employer/employee relationship. *See* <u>Gonzalez v. Allied Barton Sec. Servs.</u>, 2010 U.S. Dist. LEXIS 101846, at *4 (S.D.N.Y. Sept. 7, 2010), *report and recommendation adopted* 2010 U.S. Dist. LEXIS 101265, (S.D.N.Y. Sept. 27, 2010) (While DOT was permitted to request that a guard not be assigned to its sites, Allied Barton made the final decision about all transfers. DOT's ability to request

reassignment did not constitute an employer relationship); *see also* McCray v. City University of New York, 2011 U.S. Dist. LEXIS 31326, at *4 ("that a government entity requests that a security guard no longer be assigned to its work sites does not in itself give rise to an employer-employee relationship.")

Here, plaintiff was terminated by the Downstate Labor Relations Department without input from any HHC or KCHC employee. *See* Defs.' 56.1 at ¶34. It is established by the record that the decision to terminate plaintiff was made jointly by Leonzo Cuiman, Vice President of SUNY Downstate Labor Relations, and Stephanie Bernadel, Senior Personnel Associate in the SUNY Downstate Labor Relations Office, along with Adriana Conde-Billy, Director of SUNY Downstate Labor Relations, and Defendant Reede. Id. None of these individuals is employed by the Health + Hospitals Defendants. Nor did HHC or KCHC participate in the proceedings that led to plaintiff's termination, which arose from his violation of a prior settlement agreement into which he entered solely with Downstate. Indeed, Ms. Bernadel never spoke with any HHC employee in connection with the investigation into plaintiff's behavior, nor was anyone from KCHC even notified when Plaintiff was eventually terminated. *See* Defs.' 56.1 at ¶¶34-35. Accordingly, Health + Hospitals Defendants lacked the power, right or means to fire or terminate plaintiff's employment, and, that notwithstanding, they did not do so in this matter. As such Health + Hospitals Defendants were not a joint employer of plaintiff.

**ii. Health + Hospitals Defendants Could Not and Did Not Hire Plaintiff.**

Even if the Court deems Health + Hospitals Defendants' inability to fire plaintiff or lack of involvement in his actual termination non-dispositive of the joint employer inquiry, the remaining factors used by the Second Circuit weigh heavily against a joint employer finding. The Affiliate Agreement between Downstate and HHC provides that "[Downstate] may follow its own internal personnel policies and procedures with respect to hiring Physician Providers."

*See* Defs.' 56.1 at ¶21. Thus, Health + Hospitals defendants had no input on Downstate's hiring of plaintiff, despite plaintiff's unsupported assertions to the contrary. *See* Defs.' 56.1 at ¶¶5-9. This is precisely the point of the Agreement: Downstate provided physicians to work in certain HHC facilities. The job posting to which plaintiff responded in order to attain his employment was issued by SUNY Downstate Medical Center. *See* Defs.' 56.1 at ¶5. In fact, on or about March 15, 2001, Plaintiff was hired via letter by David Stark, MD, Professor and Chairman of the Department of Radiology at SUNY Downstate Medical Center. Id. The letter informing Plaintiff of his hiring was printed on SUNY Downstate letterhead, and explicitly indicates that the hiring was pursuant to an affiliation agreement between Downstate and HHC. Id. Moreover, the notification of initial professional employment lists plaintiff's position as "Assistant Professor of Clinical Radiology". *See* Defs. 56.1 at ¶6. Neither document lists Health + Hospitals Defendants other than in reference to the affiliation agreement. *See* Defs. 56.1 at ¶¶5-6. In addition to the aforementioned hiring documents, plaintiff's Downstate Medical Center personnel file is replete with indications that he was hired by Downstate. *See* Defs.' 56.1 at ¶9. For example, on an employment eligibility verification form sent to the United States Department of Justice, plaintiff's employer is listed as SUNY Downstate Medical Center. *See* Defs. 56.1 at ¶7.

When plaintiff temporarily resigned from his employment in April 2008, he did so via letter to Dr. Salvatore Scalfani in his capacity as Chairman of the Department of Radiology at SUNY Downstate Medical Center. *See* Defs. 56.1 at ¶15. When plaintiff was re-hired in 2010, it was Dr. Scalfani who extended the offer of employment, again on SUNY Downstate Medical Center letterhead. *See* Defs. 56.1 at ¶17. That letter indicated that while the position for which Plaintiff was hired was subject to the approval of Ian Taylor, M.D., the Dean and President of

10

SUNY Downstate Medical Center, with respect to Health + Hospitals Defendants, it required only a statement of funding approval. Id. Plaintiff cannot produce any evidence beyond his own unsupported assertions that Health + Hospitals Defendants were even consulted about the possibility of his hiring and placement in KCHC.

Finally, beyond the aforementioned evidence, it is clear that Health + Hospitals Defendants' lacked sufficient control over plaintiff's employment to be deemed a joint employer. That lack of control is evidenced by the fact that, on October 19, 2009, while plaintiff was working part time as an hourly employee of Downstate, Dr. Scalfani unilaterally reassigned him to University Hospital, a facility maintained by the SUNY defendants. *See* Defs. 56.1 at ¶16. Accordingly, it cannot be said that Health + Hospitals Defendants hired plaintiff, or even had the ability to do so, or that it held reasonable control over plaintiff's assignment, which otherwise was within the manifest control of Downstate.

### iii.    Health + Hospitals Defendants Did Not and Could Not Discipline Plaintiff.

In addition to lacking the ability to hire or fire plaintiff, Health + Hospitals Defendants did not have the ability to discipline him. As an employee of Downstate, plaintiff was a member of United University Professions ("UUP"), a union representing nearly all of the physicians employed by Defendant SUNY. *See* Defs. 56.1 at ¶10. Accordingly, to the extent Plaintiff was subject to any discipline, the applicable procedures would have been governed by Article 19 of the collective bargaining agreement between UUP and the State of New York which explicitly states "discipline shall be imposed upon employees only pursuant to this article". *See* Defs. 56.1 at ¶11.

Moreover, as set forth in Point II(2)(i) *supra*, plaintiff was terminated by the Downstate Labor Relations Department. Stephanie Bernadel, the individual leading the investigation into

Plaintiff's conduct did not speak with a single HHC employee during the course of her investigation. *See* Defs. 56.1 at ¶35. Nor did anyone from SUNY Downstate Labor Relations contact HHC to let it know that plaintiff had been fired. Id. As well, Dr. Ghassan Jamaleddine, then Chief Medical Officer of Kings County Hospital Center, was never told by anyone at Downstate that they wanted plaintiff fired, never asked anyone himself to see to it that plaintiff would be fired, or even indicated that he himself wanted plaintiff to be fired. *See* Defs. 56.1 at ¶36. Accordingly, it cannot be said that Health + Hospitals Defendants had the power to discipline plaintiff as they were not a party to the collective bargaining agreement setting forth the rules for doing so, nor were they involved in any aspect of the process that led to plaintiff's termination.

### iv. Health + Hospitals Defendants Did Not Control Plaintiff's Pay, Insurance, or Employment Records.

In addition to lacking control over the most basic functions of plaintiff's employment – hiring, firing, and discipline – Health + Hospitals Defendants held no control over plaintiff's pay, insurance, or basic employment records. A review of plaintiff's SUNY personnel file clearly establishes that he was paid directly by Downstate (albeit in part with general funds from HHC specified globally for services rendered at KCHC) and received periodic notifications from Downstate that his rate of pay was being increased pursuant to the collective bargaining agreement between UUP and the State of New York. *See* Defs. 56.1 at ¶12. Moreover, Plaintiff's SUNY personnel file lists his "pay source" as SUNY. Id. With regard to insurance benefits received by Plaintiff, his Downstate personnel file establishes that his health insurance and related benefits were provided by virtue of his employment by Downstate. *See* Defs. 56.1 at ¶13. In fact, when plaintiff applied for a mortgage, and verification of his employment was sought by his lender, it was not HHC or KCHC that was contacted, but Downstate. *See* Defs.

56.1 at ¶8. Further review of plaintiff's Downstate records indicates that Downstate, and not HHC or KCHC, maintained plaintiff's time and attendance records. *See* Defs. 56.1 at ¶14. Finally, any dispute as to who maintained plaintiff's employment records is resolved by reference to the letter that he submitted upon resigning in 2008 and the termination letter he received in 2014, each of which establishes that Downstate maintained all such records. *See* Defs. 56.1 at ¶¶15 & 33.

### v. Health + Hospitals Defendants Did Not Supervise Plaintiff.

Plaintiff does not allege that he was supervised by any employees of Health + Hospitals Defendants. Instead he admitted that his supervisors were defendant Pulitzer, Dr. Alan Kantor, and Dr. Scalfani, all employees of Downstate. *See* Defs. 56.1 at ¶18. Accordingly, Health + Hospitals Defendants further cannot be considered to be plaintiff's joint employer because no employee of HHC or KCHC supervised him. And, even if some remote or incidental supervision by any Health + Hospitals Defendant employee could be gleaned, supervising plaintiff in a limited and routine fashion, the joint employer inquiry still would fail. The Second Circuit has held that limited and routine supervision, consisting of directions of where to do a job rather than how to do the job and the manner in which to perform the work, is typically insufficient to create a joint employer relationship. *see* SEIU Local 32BJ v. NLRB, 647 F.3d 435, 443 (2d Cir. 2011).

### vi. Health + Hospitals Defendants Did Not Participate in the Collective Bargaining Process.

As set forth in Point II(2)(iii) *supra*, plaintiff was a member of United University Professions, a union representing physicians employed primarily by the State University of New York ("SUNY") and the State of New York. As a member of that union, plaintiff was covered by the collective bargaining agreement entered into by SUNY and United University Professions. *See* Defs. 56.1 at ¶10. HHC and KCHC were not participants in the collective bargaining process

13

that led to the agreement. Id. Nor are they signatories to the agreement. Id. The absence of such participation weighs heavily in favor of finding that HHC is not a joint employer.

### vii. Plaintiff's Perception of Who Employed Him is Irrelevant to the Joint Employer Inquiry.

Although plaintiff believes that both Downstate and Health + Hospitals Defendants were his employers, his opinion is irrelevant to the Court's determination. *See* Creddille v. MTA N.Y. City Transit Auth. & Core Envtl. Corp., 11-CV-5442 (SLT)(RLM), 2014 U.S. Dist. LEXIS 88426, at *18 (E.D.N.Y. June 25, 2014) *citing* Martin v. Purolator Courier, 94 CV 1004 (FB), 1996 U.S. Dist. LEXIS 22300, at *4 (E.D.N.Y. July 26, 1996) ("[T]he joint employer issue does not turn on the perceptions of the employee since employee control is primarily a function of the objective relationship and understandings of the affected employers.").

Here the understandings of the affected entities are clearly set forth in Section 24.1 of the affiliation agreement between HHC (referred to within the affiliation agreement as the "corporation") and SUNY Downstate Medical Center (referred to within the affiliation agreement as the "affiliate"). HHC and SUNY explicitly agreed *"In the performance of Contract Services under this Agreement, the Physician Providers shall be employees of the Affiliate." See* Defs. 56.1 at ¶26. Accordingly, it is abundantly clear that despite plaintiff's own irrelevant beliefs, neither HHC nor Downstate intended for plaintiff, a physician provider as defined by the affiliation agreement, to be an employee of HHC.

14

**POINT III**

**PLAINTIFF'S FAMILY AND MEDICAL LEAVE ACT CLAIMS MUST BE DISMISSED EVEN IF HEALTH + HOSPITALS DEFENDANTS ARE DEEMED PLAINTIFF'S JOINT EMPLOYER BECAUSE THEY WERE NOT HIS PRIMARY EMPLOYER**

Under the Family and Medical Leave Act ("FMLA"), Health + Hospitals Defendants may not be found liable even if the Court determines that they were a joint employer. 29 C.F.R. 826.106 governs the applicability of the Family and Medical Leave Act to, and the responsibilities of, joint employers. That statute states in relevant part: "[i]n joint employment relationships, only the primary employer is responsible for giving required notices to its employees, providing FMLA leave, and maintenance of health benefits." 29 C.F.R. 826.106(c). The statute also provides that factors to consider when determining which of two joint employers are the primary employer includes: 1) authority/responsibility to hire and fire; 2) assign/place the employee; 3) make payroll and; 3) provide employment benefits. Id.

Once a joint employer is deemed to be the secondary employer the statute dictates that they are responsible for: 1) "accepting the employee returning from FMLA leave in place of the replacement employee if the secondary employer continues to utilize an employee…"; and 2) "compliance with the prohibited acts provisions with respect to its jointly employed employees, whether or not the secondary employer is covered by FMLA. Id. at (e). The prohibited acts include prohibitions against interfering with an employee's attempt to exercise rights under the Act, or discharging or discriminating against an employee for opposing a practice which is unlawful under FMLA. Id.

Here it is altogether clear that even if Health + Hospitals Defendants could be considered plaintiff's joint employer, they plainly were not his primary employer. As set forth in Point II

15

*supra*, plaintiff was hired and fired by Downstate, placed at KCHC by Downstate, paid by Downstate, and provided with employment benefits via the agreement between his union and the State of New York. Accordingly, for purposes of his FMLA interference and retaliation claims, even if deemed a joint employer, Health + Hospitals Defendants would be determined to be plaintiff's secondary employer. And, as such, by virtue of any supposed status as a secondary employer, Health + Hospitals Defendants were required only to: 1) accept plaintiff upon his return from leave; 2) refrain from interfering with plaintiff's rights under the FMLA; and 3) refrain from discharging or discriminating against plaintiff for opposing a practice that is unlawful under the FMLA.

Therefore, even assuming plaintiff was entitled to and actually took FMLA leave, it is undisputed that plaintiff returned to work after September 4-5, 2014. *See* Defs.' 56.1 at ¶¶31-32. Moreover, even if any finding could be made of interference with plaintiff's rights under the FMLA, it was defendant Pulitzer, a Downstate employee, that denied his request for leave. *See* Defs.' 56.1 at ¶29. Finally, and as set forth more fully in Point IV *infra*, plaintiff was not discharged or discriminated against for opposing a practice that is unlawful under the FMLA. Rather, plaintiff was terminated by SUNY Downstate Medical Center's Labor Relations Department for insubordination related to his use of attestations on patient medical records and misuse of time and leave. *See* Defs.' 56.1 at ¶¶28-36.

**POINT IV**

**HEALTH + HOSPITALS DEFENDANTS DID NOT KNOW OF THE ALLEGED DISCRIMINATORY CONDUCT**

Even when two entities are deemed joint employers, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII. *See* Green v. Jacob & Co. Watches, 248 F. Supp. 3d 458, 466 (S.D.N.Y. 2017) *citing* Lima v. Addeco, 634 F. Supp. 2d

394, 400 (S.D.N.Y. 2009) *aff'd* by 375 Fed. Appx. 54 (2d Cir. 2010). "[C]ourts have found that even when a plaintiff establishes an entity's status as a joint employer, the plaintiff must still show that the joint employer knew or should have known of the discriminatory conduct and failed to take corrective measures within its control." Id.

Here, the only employee of Health + Hospitals Defendants that plaintiff alleges was involved in the decision to terminate him is Dr. Ghassan Jamaleddine, Chief Medical Officer of Kings County Hospital. However, plaintiff admitted that he does not think that Dr. Jamaleddine discriminated against him in any way. *See* Defs.' 56.1 at ¶42. Moreover, plaintiff cannot cite to any evidence that Dr. Jamaleddine was aware of any supposed bias or basis for discrimination by Drs. Reede and Pulitzer such that he could have taken corrective measures. In fact, the record is clear that plaintiff was terminated for "insubordination, leaving the worksite without authorization, and related matters" as well as "violating [the] September 8, 2014 disciplinary settlement agreement." *See* Defs.' 56.1 at ¶¶28-33. Plaintiff cannot point to anything in the record which would establish that the reasons for which he was terminated were pretextual and a cover for discrimination based upon his age, race, or religion.

In Green, the purported joint employer's motion for summary judgment was denied because plaintiff alleged: 1) that he told one joint employer about the conduct of the other joint employer; and 2) that the joint employer "recognized the disparity of treatment" but took no action to prevent it. In contrast here, Plaintiff makes no such allegation that the Health + Hospitals Defendants or anyone employed by them were aware of discrimination by the SUNY defendants. Plaintiff admits that he was not even familiar with the KCHC Labor Relations Department or Office of Equal Employment Opportunity, and that he does not recall

17

complaining to KCHC Labor Relations about any issues that he was having. See Pl. Dep 408:18-409:24.

In Lima, summary judgment was granted in favor of a joint employer because the discriminatory treatment complained of involved only conduct by a co-defendant joint employer who was solely responsible for the plaintiff's termination. Moreover, the plaintiff in Lima made no indication that he had informed the co-defendant joint employer of the discriminatory behavior, and the record did not support a finding that the joint employer knew or should have known of said behavior. Likewise here, plaintiff cannot establish that Health + Hospitals Defendants were informed of any alleged discriminatory behavior by defendants Reede or Pulitzer.

In any event plaintiff cannot meet his burden under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[1] Even assuming plaintiff has articulated a *prima facie* case of discrimination, he cannot establish that the legitimate non-discriminatory reasons for his termination were pre-textual. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1981). As set forth *supra*, the record clearly indicates that plaintiff was terminated for insubordination related to his use of attestations on patient medical records and misuse of time and leave. Plaintiff's only evidence that the reasons for his termination were pre-textual is wholly insufficient.

First, plaintiff argues that the termination of other older, white, and Jewish physicians is proof that his own termination was impermissible, but offers no admissible support upon which

---

[1] The burden shifting analysis set forth in McDonnell Douglas applies to plaintiff's City and State Human Rights Law claims. Melman v Montefiore Med. Ctr., 98 A.D.3d 107, 112-13, 946 N.Y.S.2d 27, 29, (1st Dep't 2012). Moreover, discrimination cases brought under Section 1983 are governed by the same standards applicable to Title VII discrimination claims. Back v.Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122-23 (2d Cir. 2004)

the Court could come to such a conclusion. *See* Defs.' 56.1 at ¶¶37-38. In order to establish a pattern of discrimination, plaintiff's proffered evidence must meet certain minimal standards. *See* LaMarch v. Tishman Speyer Props., L.P., No. 03-CV-5246, 2006 U.S. Dist. LEXIS 55006, at *6 (E.D.N.Y. Aug. 7, 2006) ("[Plaintiff's] [**59] statistical evidence regarding the terminations of employees older than 40 would be inadmissable because it is not supported by any expert analysis . . . ."). Plaintiff not only fails to submit statistical evidence upon which the Court could conclude that there was such a pattern of discriminatory firings, but no evidence at all beyond his own conclusions. In any event, much like the reasons for his own termination, the justification for terminating other physicians was legitimately based, as provided by the record, upon the shortcomings of the Downstate Radiology Department and its placement on probation by the Accreditation Council for Graduate Medical Education ("ACGME"). *See* Defs.' 56.1 at ¶41.

The rest of Plaintiff's evidence of a pattern of discrimination is rife with hearsay and speculation. In fact, the remainder of the basis for plaintiff's belief that Dr. Reede discriminated against older, white, Jewish physicians, are hearsay statements that are insufficient to defeat this motion. *See* Defs. 56.1 at ¶39-40. *See* LaMarch, 2006 U.S. Dist. LEXIS 55006, at *6 (refusing to consider both "testimony regarding other employees' statements about age discrimination," because it was hearsay, and "testimony regarding [plaintiff's] own perception of a 'pattern' of terminating older employees," because it was speculation).

Accordingly, even if the Court could find that Health + Hospitals Defendants were plaintiff's joint employer with Downstate, the claims against HHC and KCHC must be dismissed because they did not know, nor should they have known, of any discriminatory conduct by the Downstate defendants. Nor does the record establish that any of the employment actions taken

by Downstate toward plaintiff were motivated by, or otherwise resulted from, discrimination based on his religion, race or age, or due to retaliatory animus. As such, summary judgment dismissing the Second Amended Complaint, and its claims, should be granted.

### CONCLUSION

For the foregoing reasons, Health + Hospitals Defendants respectfully request that the Court issue an order granting their Motion for Summary Judgment and dismissing Plaintiff's Second Amended Complaint as against Health + Hospitals Defendants in its entirety, with prejudice, and awarding Health + Hospitals Defendants costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
          March 26, 2018

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
Attorney for Health + Hospitals Defendants
100 Church Street, Room 2-146
New York, New York 10007
T: (212) 356-5037
rshaffer@law.nyc.gov

By:      _____/s/_____
          Ryan G. Shaffer
      Assistant Corporation Counsel

Ryan G. Shaffer,
Maxwell Leighton,
  Of Counsel.